Beyond Air
The Magic of Breathing

AT-WILL EMPLOYMENT AND CONFIDENTIALITY AGREEMENT

TO: **Jeffrey Griebel**

In connection with your employment with Beyond Air, Inc., a Delaware corporation ("BA"), we are pleased to present you with this At-Will Employment and Confidentiality Agreement (this "Agreement"). This Agreement sets forth the terms and conditions of your employment with the Company, and will be effective, as of the Effective Date set forth below, when you sign it in the space provided below (subject to acceptance by Company by its signature).

By our signatures below, you and Company acknowledge that the terms and conditions of this Agreement are supported by the mutual rights and responsibilities created in this Agreement, along with other good and valuable consideration.

We look forward to our relationship, and wish you the very best as a member of the Beyond Air team!

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

1. Contents of Agreement. This Agreement consists of this Signature Page, Schedule A (General Terms and Conditions), Schedule B (Definitions), and Schedule C (Inventions, Patents, Copyrights, and Agreements), and Schedule D (Established Competitors) attached to this Signature Page and incorporated by reference. 2. Definitions. Except as otherwise defined in this Agreement, capitalized terms will have the meanings set forth in Schedule B entitled "Definitions."

Effective Date: 10-26-21
Employee Name: Jeffrey Griebel
Employee Office: Garden City, NY
Employee Position: Director, Clinical Services

Agreed to and Accepted:

______________________________
Employee Signature

Date: 28Oct2021, 2021

Agreed to and Accepted:

____________________ (on behalf of Company)

By: John M Morr Title: Head of Human Resources

Date: October 26, 2021

Residence Address and Address for Notices (Employee): JLGriebel@gmail.com

BEYOND AIR, INC.

Address and Contact for Notices (Company):

Beyond Air, Inc., 900 Stewart Ave, Suite 301, Garden City, NY 11530
Attn: Head of Human Resources

**A -1**

**AT-WILL EMPLOYMENT AND CONFIDENTIALITY AGREEMENT**

SCHEDULE A (GENERAL TERMS AND CONDITIONS)

1. **At-Will Employment.**

Employee's employment by Company will be at-will. Employee understands and agrees that as an at-will employee, either Employee or Company may terminate Employee's employment at any time, for any reason or for no reason, with or without notice. Nothing in this Agreement will create an offer or promise of, or agreement for, employment for any specific period of time. Employee agrees that, in accepting employment with Company, Employee has not relied, and will not rely, on any statements or representations, whether oral or in writing, by any officers, employees, or agents of Company concerning the duration or term of employment, grounds or procedures for discharge or termination of employment, or any other terms and conditions of employment. Employee will comply with all policies, procedures, handbooks, personnel manuals and instructions of Company as they may exist from time to time, and Company retains the right to adopt, expand, modify, or delete any policies, procedures, handbooks, personnel manuals or instructions at any time in its sole and absolute discretion. Further, as an at-will employee, Employee does not have any continuing right to any particular position, office location, compensation, benefits, remuneration or other terms and conditions of employment, any or all of which Company may change or eliminate at any time in its sole and absolute discretion.

2. **Intellectual Property and Other Property.**

2.1 Assignment of Subject Inventions. By this Agreement, Employee irrevocably assigns to Company all of Employee's rights to all Subject Inventions in the United States and all other countries and the right to claim priority in them.

2.2 Previously Conceived Inventions. If Employee previously has conceived of any Invention or acquired any ownership interest in any Invention that: (i) is Employee's property, solely or jointly; (ii) is not described in any issued patent as of the commencement of Employee's employment with Company; and (iii) would be a Subject Invention if it were made while a Company employee, then Employee must, at Employee's election, either: (a) provide Company with a written description of the Invention on Schedule C, in which case the written description (but no rights to the Invention) will become the property of Company; or (b) provide Company with the license described in Section 2.3 of this Agreement.

2.3 License to Undisclosed Previously Conceived Inventions. If Employee previously has conceived of or acquired any ownership interest in an Invention described above in Section 2.2 and Employee elects not to disclose it to the Company as provided in Section 2.2, then by this Agreement, Employee grants to Company a nonexclusive, paid up, royalty-free license to use and practice the Invention, including a license under all patents to issue in any country that pertain to the Invention.

2.4 Disclosure of Patents. On Schedule C, Employee has listed the patent number and/or foreign number of any issued U.S. patent or foreign equivalent, and describe any pending U.S. patent application or foreign equivalent application, in either case in which Employee has an ownership interest or with respect to which

Employee is an inventor, either individually or jointly. Employee represents that Employee otherwise owns no interest in a U.S. patent or foreign equivalent, or application for a U.S. patent or foreign equivalent, and is not an inventor with respect to any such patent, application, or equivalent, either individually or jointly.

2.5 Patent Applications and Maintenance. If Company elects to file one or more applications for a U.S. patent or foreign equivalent, on a Subject Invention of which Employee is an inventor, Employee will sign all necessary documentation relating to the application(s), including formal assignments to Company, and will cooperate with attorneys or others designated by Company to provide all information necessary for the prosecution of the application(s). Employee also will assist Company in every proper way to maintain its patents and foreign equivalents during and following Employee's period of employment, including, but not limited to, the performance of all lawful acts, such as the giving of testimony in any interference proceedings, infringement suits, or other litigation, as may be deemed necessary or advisable by Company.

2.6 Works. (a) Works for Hire. Any Works will be subject to the "Work for Hire" provisions contained in Sections 101 and 201 of the United States Copyright Law, Title 17 of the United States Code. All right, title, and interest in and to copyrights in all Works will be the property of Company. To the extent the provisions of Title 17 of the United States Code do not vest the copyrights to any Works in Company, Employee, by this Agreement, assigns to Company all right, title, and interest to copyrights that Employee may have in the Works. (b) Existing Copyrights. If Employee owns any interest in any copyrights, Employee has listed them on Schedule C. Employee will not claim any ownership rights in any copyrights other than those described on Schedule C. (c) Assistance. Employee will assist Company in every proper way to register and maintain its copyrights in any Works during and following Employee's period of employment including, but not limited to, the performance of all lawful acts, such as the giving of testimony in any infringement suits or other litigation, as may be deemed necessary or advisable by Company.

2.7 Other Property. Company will own, and Employee by this Agreement assigns to Company, any and all other intellectual property, including but not limited to other intellectual property, both tangible and intangible, conceived or created by Employee in the course of Employee's duties as an employee of Company, and Company will have the right to obtain and hold in its own name any registrations and similar protections that may be available in any of that property. Employee will assist Company in every proper way to register and acquire similar protections with respect to such intellectual property, and to maintain such protections, during and following Employee's period of employment including, but not limited to, the performance of all lawful acts, such as the giving of testimony in any infringement suits or other litigation, as may be deemed necessary or advisable by Company.

3. **Restrictive Covenants.**

3.1 Covenant of Non-Disclosure and Non- use.

(a) Duties. Except as reasonably necessary or appropriate in connection with Employee's performance of Employee's duties for Company, or as authorized by Company in writing, Employee will not disclose, and will not use, exploit, assign, reproduce, reverse engineer, decompile, or disassemble, directly or indirectly, in any form, by any means, or for any purpose, any of the Proprietary Information. Employee will notify Company immediately upon discovery of any unauthorized use or disclosure of the Proprietary Information.

(b) Duration of Non-Disclosure. Employee's non-disclosure obligations under Section 3.1(a) will continue (i) with respect to Confidential Information, for the period in which Employee is employed with Company plus the two (2) year period after Employee's employment with Company ends, regardless of the reason for the end of Employee's employment with Company and regardless of

whether Company or Employee initiated the end of Employee's employment, and (ii) for Trade Secrets, for so long as Company or the relevant Business Contact is entitled to protection of rights in such Trade Secrets under applicable law. Employee's obligations under Section 3.1(a) other than those relating to non-disclosure of Proprietary Information, including, but not limited to, Employee's obligations with respect to non-use of Proprietary Information, will continue in perpetuity.

3.2 Covenant of Loyalty and Non-disparagement. Employee recognizes that, as a direct consequence of the materials, information, and training provided or to be provided to Employee by Company, the access Employee receives to Proprietary Information and the opportunities that Employee will have while employed by Company to cultivate the loyalty and goodwill of Company's Business Contacts, it is important that Employee refrain from engaging in activities that could result in damage to Company's business. Therefore, while employed by Company, Employee will not engage in any business activity (other than activities that are authorized by and on behalf of Company), either on Employee's own behalf or on behalf of any other Person, involving products or services that are in competition with Company. While employed by Company, Employee can invest in the stock or securities of an Established Competitor, or any other competitor of Company, only if (i) the competitor's stock or security is traded on a national exchange, (ii) Employee makes disclosure in writing of the ownership or trading in the competitor's stock or security to Company, and (iii) Employee's trading in the stock or security is not based on nonpublic information concerning Company and is not otherwise in violation of any applicable federal or state securities laws. Notwithstanding the above restriction, Employee will be entitled to own an interest in a competitor of Company through a mutual or similar fund open for investment to the general public. In addition, Employee acknowledges and agrees that during the term of Employee's employment with Company, Employee will be a full- time employee of Company, will devote all of Employee's business time to Company, and will not maintain an employment relationship with any other Person. Further, both during and after Employee's employment with Company, Employee will not make any statements that are professionally or personally disparaging about, or adverse to the interests of, Company, or any Persons acting by, through, under, or in concert with Company, including, but not limited to, any statement that disparages Company or any such Person, any Company product or service, Company's financial condition, Company's business, or Company's capability or any other aspect of the business of Company to perform its business.

3.3 Covenant Not To Solicit Personnel. Employee recognizes that Company has invested considerable time and money to train its employees in the services provided by Company and to develop the special skills required to perform those services. Therefore, Employee will not, during the Restricted Period, (i) solicit, entice or otherwise seek to persuade, either directly or through any other Person, any officer, employee, consultant, or agent of Company to discontinue his or her relationship with Company for any reason, or (ii) hire, on Employee's own behalf or on behalf of any other Person, any individual who is then an employee of Company or who was an employee of Company during the six (6) month period prior to the end of Employee's employment with Company.

3.4 Covenant Not To Solicit Customers. During the Restricted Period, Employee will not (i) solicit or attempt to solicit, directly or indirectly, any Customer for the purpose of offering or providing to that Customer any products or services that are competitive with products or services provided or offered in the marketplace by Company, or (ii) otherwise encourage a Customer not to purchase products or services from Company or to reduce the scope or amount of products or services the Customer purchases from Company.

3.5 Covenant Not To Compete. During the Restricted Period, Employee will not perform Competitive Responsibilities, will not provide management or supervision of any other Person's performance of Competitive Responsibilities, and will not provide advice or counsel with respect to how any other Person

should perform Competitive Responsibilities (a) in any state in which Employee provides services on behalf of, or supervises or manages the provision of services for, Company within two (2) years prior to the end of Employee's employment and (b) within a fifty-mile radius of the locations of all of the specific customer accounts, whether within or outside of the geographic area described in (a), where Employee has material business contact, whether in person or by correspondence, phone, email, or otherwise, with the customer account at the location, or where Employee has supervisory authority over other employees' material business contact with the customer account at the location, within two (2) years prior to end of Employee's employment.

3.6 Covenant Not To Assist Established Competitors. In addition to the restrictions in Section 3.5 above, during the Restricted Period, Employee will not perform Competitive Responsibilities, will not provide management or supervision of any other Person's performance of Competitive Responsibilities, and will not provide advice or counsel with respect to how any other Person should perform Competitive Responsibilities, on behalf of any "Established Competitor" anywhere within the United States.

4. **Severability of Covenants.**

Employee acknowledges and agrees that Employee's position with Company will afford Employee an opportunity to access and acquire Proprietary Information that is not generally available to the public, and that the misappropriation, unauthorized use, or disclosure of Proprietary Information would cause Company irreparable harm. Employee recognizes and agrees that Company must take appropriate and commercially reasonable steps to safeguard the confidentiality of such Proprietary Information, and that Employee's compliance with each covenant in Section 3 above is of the essence to Company. Therefore, it is the intent of both Company and Employee that the covenants set forth in Section 3 above be recognized as separate and independent, stand-alone provisions, and further acknowledge that good and valuable consideration has been given and received for Employee's compliance with each. Further, Employee agrees that if a court determines that any of the restrictions contained in Section 3 are unenforceable by reason of their extent, duration, scope, or otherwise, the court may modify the restriction, but only to the extent necessary to render it enforceable, and, in its modified form, may enforce the restriction. Alternatively, if the court declines to modify the restriction, the court may sever the portions of the restriction that the court determines are unenforceable and enforce the remainder of the restriction. Employee's agreement to follow the terms of Section 3 is a material part of the consideration for Company's agreement to employ Employee.

5. **Agreements with Former Employers or Others.**

5.1 Restrictions on Competition or Solicitation. Employee has previously disclosed to the Company and has listed on Schedule C any employment, consulting, subcontracting, or similar agreements signed by Employee with a former employer, or any other Person with whom Employee has been associated, that prohibits Employee during a period of time from (i) competing with or participating in a business that competes with Employee's former employer or business; (ii) soliciting personnel of the former employer or business to leave the former employer's or employment or to leave the business; or (iii) soliciting customers of the former employer or business on behalf of another business, and Employee concurrently will provide Company with copies of the pertinent portions of any such agreements.

5.2 Agreements Requiring Assignment to Others. By this Agreement, Employee represents to Company that Employee has not entered into any agreement with any other Person that purports to require Employee to assign any Invention or any Work created, conceived, or first practiced by Employee during a period of time that includes the date of Employee's commencement of employment with Company, nor is Employee subject to any law, court order, or regulation that purports to require that assignment, except as described on

Schedule C. Employee promptly will provide to Company a copy of the above described agreement(s) and a reference to any such law, court order, or regulation.

6. **Governing Law; Remedies.**

6.1 Governing Law; Venue. This Agreement will in all respects be interpreted, governed, and enforced by the laws and courts of the State of New York, without regard to its principles of conflicts of law. If a dispute arises out of or in connection with this Agreement or the subject matter of this Agreement, including, without limitation, regarding the breach, termination, or validity of this Agreement, Employee agrees that a claim can be brought only in a federal or state court in New York. Employee consents to the personal jurisdiction of such courts with respect to any claim arising out of or in connection with this Agreement, including, without limitation, regarding the breach, termination, or validity of this Agreement.

6.2 Remedies. Employee agrees that a breach of Employee's obligations under this Agreement will cause Company irreparable harm for which there is no adequate remedy available at law, and accordingly, Company will be entitled, in addition to any other available remedies, to injunctive or other equitable relief to require specific performance, or to prevent a breach, without posting bond or any requirement or showing that Company has suffered any damages as a result of Employee's breach. If any provision of this Agreement is determined not to be specifically enforceable, Company nonetheless will be entitled to recover monetary damages as a result of Employee's breach of the provision. Employee will be liable for any and all reasonable attorneys' fees, expenses, and arbitration and/or court costs in connection with the enforcement of Company's rights at law or in equity under this Agreement. Employee acknowledges and agrees that the existence of any claim Employee might have against Company does not constitute a defense to Company's right to enforce any of its rights under this Agreement.

7. **Duties upon Termination.**

7.1 Return of Property. Upon termination or expiration of this Agreement for any reason, Employee will return to Company all Company property, including but not limited to (a) Company access cards and keys, Company equipment (including but not limited to computers, faxes, cell phones, etc.), and Company credit cards, all of which are to be returned to the attention of the Human Resources Department, and (b) all Company documents (and any hard or electronic copies) and all other Company property of any kind or nature (including, without limitation, any and all personnel documents, employee or customer lists, and personnel manuals).

7.2 Cooperation. From and after the termination or expiration of this Agreement for any reason, Employee will provide such reasonable cooperation as Company may request in connection with any litigation, administrative proceedings, disputes, or other controversies to which Company may be a party; provided, however, that Company will reimburse Employee for all reasonable expenses associated with Employee's cooperation as requested by Company. Further, Employee will ensure that Company has possession of any and all documents, files, records, materials, or otherwise, whether electronic or paper, irrespective of the media, related to any litigation, administrative proceedings, disputes, or other controversies to which Company is or becomes a party and of which Employee becomes aware.

7.3 Survival of Terms. Upon termination or expiration of this Agreement for any reason whatsoever, the provisions hereunder that by their sense and context are intended to survive termination, including without limitation Sections 2, 3, 4, 6, 7 and 8, will so survive.

8. **Miscellaneous.**

8.1 Entire Agreement. This Agreement, including Schedules attached to it, constitutes the entire agreement between the parties, and any and all other agreements, understandings, and representations, whether oral or written, between the parties with respect to the subject matter of this Agreement are superseded, and the parties acknowledge and agree that there are no other agreements, understandings, or representations of any kind whatsoever remaining between them. In entering into this Agreement, neither party has relied on any representation, promise, or inducement made by the other party, except as expressly provided in this Agreement.

8.2 Construction; Headings. No interpretation of this Agreement will apply the rule of construction that a document is to be construed more strictly against the party that itself or through its agent prepared the document. Headings and captions in this Agreement are for convenience only and will in no way define, limit, or otherwise affect the meaning or construction of any provision.

8.3 Binding. This Agreement is binding on Employee and Employee's heirs, legal representatives, successors, and assigns, and will inure to the benefit of Company's successors and assigns.

8.4 Amendments. This Agreement may be modified or amended only by written agreement signed by the parties.

8.5 Waiver. No failure on the part of either party to exercise any right will operate as a continuing waiver of that right or a waiver of that party's right to exercise the same, a similar, or any other right in the future.

8.6 Rights to Remuneration. Employee agrees that, during the term of employment, any money or other remuneration received by Employee for services rendered to a customer or potential customer of Company will be the property of Company. Employee will perform Employee's obligations under Sections 2.5, 2.6(c), and 2.7 without any additional remuneration for that performance.

8.7 Severability. If any provision in this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect without being impaired or invalidated in any way, and this Agreement will be deemed amended, to the extent legally possible, to preserve the intent of the provision held invalid or unenforceable.

8.8 Attorney Review. It is Company's desire and intent to make certain that Employee fully understand the provisions and effects of this Agreement, and Employee acknowledges that Company has advised Employee, and has given Employee the opportunity, to consult with legal counsel for the purpose of reviewing the terms of this Agreement.

8.9 Notices. Except as otherwise provided in this Agreement, all notices, consents, and demands required or otherwise given under this Agreement will be in writing and deemed given if provided by hand delivery or overnight courier, addressed to the other party at the address set forth on the Signature Page. Either party may change its contact information for receipt of notices, consents, and demands by providing notice of that change as provided in this Section 8.9. Any notice, consent, or demand provided by a party will be deemed given and received upon actual receipt by the other party.

Employee Initials: jlg

Type text here

**B – 1**

**AT-WILL EMPLOYMENT AND CONFIDENTIALITY AGREEMENT**

SCHEDULE B (DEFINITIONS)

Except as otherwise specified in Schedule A to this Agreement, the definitions of the capitalized terms set forth in below will apply with respect to the entire Agreement. The terms “Agreement,” “{COMPANY NAME}”, “Employee,” and “Effective Date” are as set forth on the Signature Page.

1. Business Contacts. Present and potential customers, business partners, affiliates, investors, contractors, joint venture partners, distributors, vendors, suppliers, and agents of Company.
2. Company. BEYOND AIR, INC
3. Competitive Responsibilities. Duties and responsibilities that (i) are the same as or substantially similar to the duties and responsibilities of the Employee Position set forth on the Signature Page and (ii) involve the development, marketing, distribution, sale, or support of products or services that are competitive with the products or services offered by Company.
4. Control. Having the ability to direct the management and policies of another entity, whether directly or indirectly.
5. Customer. Any customer or actively sought prospective customer of Company with which Employee has material business contact on behalf of Company within two (2) years prior to the end of Employee’s employment with Company.
6. Established Competitors. The Persons set forth on Schedule D to this Agreement.
7. Invention. Any idea, invention, discovery, improvement, innovation, design, process, method, formula, technique, machine, article of manufacture, composition of matter, algorithm, or computer program, as well as improvements to any of the above.
8. Person. Any corporation, company, partnership, firm, joint venture, association, trust, governmental agency, other entity, or individual.
9. Proprietary Information. Collectively, Trade Secrets and Confidential Information, defined as follows: (a) Trade Secrets. Information of Company and its Business Contacts, without regard to form, including, but not limited to, technical or non-technical data, formulae, patterns, compilations, programs, devices, methods, techniques, drawings, processes, discoveries, developments, designs, financial data, financial plans, product plans, technical documentation and specifications, or lists of actual or potential customers or suppliers (i) that derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; or (ii) that otherwise constitutes a trade secret within the meaning of any applicable statute or common law protecting trade secrets. (b) Confidential Information. Confidential or proprietary information of Company or its Business Contacts, other than Trade Secrets, of value to Company and its Business Contacts, as applicable (including but not limited to that confidential or proprietary information held by a court of competent jurisdiction not to rise to the level of a Trade Secret).
10. Restricted Period. The period in which Employee is employed with Company plus the one (1) year period after Employee’s employment with Company ends, regardless of the reason for the end of Employee’s employment with Company, and regardless of whether Company or Employee initiate the end of Employee’s employment.
11. Subject Invention. Any Invention that is conceived by Employee solely or jointly with others, during the period of Employee’s employment with Company, and (i) relates to the actual or anticipated business, research, or development of Company, (ii) results from any work performed by Employee using any equipment, facilities, materials, Proprietary Information or Company personnel, or (iii) is suggested by or results from any task assigned or performed by Employee for or on behalf of Company.
12. Work. Any copyrightable work of authorship, including without limitation, any technical descriptions for

products, user's guides, graphical works, audiovisual works, sound recordings, literary works, illustrations, advertising materials, computer programs (including the contents of read only memories), any modifications, improvements, or derivative works thereof, and any contributions to such works, that is conceived by Employee solely or jointly with others, during the period of Employee's employment with Company, and (i) relates to the actual or anticipated business, research, or development of Company, (ii) results from any work performed by Employee using any equipment, facilities, materials, Proprietary Information or Company personnel, or (iii) is suggested by or results from any task assigned or performed by Employee for or on behalf of Company.

Employee Initials: jlg

**AT-WILL EMPLOYMENT AND CONFIDENTIALITY AGREEMENT**

SCHEDULE C (INVENTIONS, PATENTS, COPYRIGHTS, AND AGREEMENTS)

1. Previously Conceived Inventions. (Please describe any Inventions (as defined in Item 8 of Schedule B) that meet the requirements of (i) through (iii) in Section 2.2.)

2. Patents. (Please list or describe all patents Employee owns, or with respect to which Employee is an inventor, either individually or jointly.)

3. Copyrights. (Please list any Copyrights owned by Employee, either individually or jointly.)

4. Agreements with Former Employers or Others. (Please list and provide copies of pertinent portions of all agreements with former employers or others containing the restrictions described in Section 5 or requiring the assignment of Inventions or Works.)

Employee Initials: jlg

**D - 1**

**AT-WILL EMPLOYMENT AND CONFIDENTIALITY AGREEMENT**

ESTABLISHED COMPETITORS