UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
JEFFREY GRIEBEL,

Plaintiff,

Case No. 25-cv-2969 (AMD)(ST)

-against-

BEYOND AIR, INC.,

Defendant.
----------------------------------------------------------------------X

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Forchelli Deegan Terrana LLP
*Attorneys for Defendant*
333 Earle Ovington Blvd., Suite 1010
Uniondale, New York 11553

## TABLE OF CONTENTS

**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... iii

**STATEMENT OF FACTS** .......... 1

***A. Beyond Air is a Publicly Traded Company Incorporated in Delaware*** .......... 1

***B. Plaintiff's Situs of Employment with Beyond Air Is In Colorado*** .......... 2

***C. Plaintiff's Limited Contacts with New York State*** .......... 2

***E. Plaintiff's Alleged Complaint in December 2024 Was Just a Regular Email*** .......... 3

***F. Plaintiff's Termination from Beyond Air Was For Downsizing Purposes*** .......... 4

***G. Plaintiff Receives Unemployment Benefits from Colorado*** .......... 4

**LEGAL ANALYSIS** .......... 5

**I. STANDARD OF REVIEW** .......... 5

**II. RECORDS TO CONSIDER ON THE MOTION TO DISMISS** .......... 5

*A. Documents Incorporated by Reference, such as the December 10, 2024 Email.* .......... 5

*B. Documents Integral to the Complaint, Such As the Employment Agreement, Proof of Situs of Employment and NY Contacts* .......... 6

*C. Alternatively, the Court May Consider This as a Motion for Summary Judgment.* .......... 7

**III. PLAINTIFF, A COLORADO EMPLOYEE WHO SPENT NO MORE THAN 4 DAYS PER YEAR IN EACH OF THE TWO YEARS PRECEDING HIS TERMINATION, CANNOT STATE A CLAIM UNDER NYLL §§ 740 or 741.** .......... 7

*A. Plaintiff Is A Resident and Employee Based Out of Colorado.* .......... 7

*B. The New York Labor Law Does Not Apply to Work Performed Out of State.* .......... 8

*C. Plaintiff's De Minimus Contacts With New York State Do Not Extend the Reach of the NYLL.* .......... 9

*D. Plaintiff Was Only In New York State For 4 Days in 2024 and 2023.* ............................ 9

**IV. BEYOND AIR IS NOT A HEALTH CARE EMPLOYER AND PLAINTIFF WAS NOT A HEALTH CARE EMPLOYEE AND CANNOT ASSERT A CLAIM UNDER NYLL §741.** ........................................................................................................... 14

*A. Plaintiff As An Administrator Did Not Provide Health Care Services to Patients And Is Not An Employee Under NYLL §741.* ........................................................................ 15

*B. Beyond Air Does Not Provide Health Care Services and Is Not An Employer Under NYLL §741.* ........................................................................................................... 16

**V. PLAINTIFF DID NOT ENGAGE IN ANY WHISTLEBLOWING ACTIVITY.** ..... 17

**CONCLUSION** ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Barshay v. Naithani,*
2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023), *aff'd,* No. 23-382, 2023 WL 8708424 (2d Cir. Dec. 18, 2023) .......... 6

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 6

*Cuhadar v. Savoya, LLC*,
766 F. Supp. 3d 434 (E.D.N.Y. 2025) .......... 5

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010) .......... 6

*Fried v. LVI Servs., Inc.*,
500 F. App'x 39 (2d Cir. 2012) .......... 13

*Galeotti v. Cianbro Corp.*,
2013 WL 3207312 (N.D.N.Y. June 24, 2013) .......... 8

*Garcia v. ROC Nation LLC,*
2025 WL 1865965 (S.D.N.Y. July 2, 2025) .......... 14

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) .......... 7

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016) .......... 6

*Goshen v. Mut. Life Ins. Co. of New York*,
286 A.D.2d 229 (1st Dept. 2001), *aff'd,* 98 N.Y.2d 314 (2002) .......... 9

*Hammel v. Paribas*,
1993 WL 426844 (SDNY 1993) .......... 17

*Hammell v. Paribas*,
1993 WL 426844 (S.D.N.Y. Oct. 22, 1993) .......... 10

*Hart v. Dresdner Kleinwort Wasserstein Sec., LLC,*
2006 WL 2356157 (S.D.N.Y. Aug. 9, 2006) ........................................ 11

*HC2, Inc. v. Delaney*,
510 F.Supp.3d 86 (2020) ........................................ 21

*Heng Guo Jin v. Han Sung Sikpoom Trading Corp.,*
2015 WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015) ........................................ 12

*Hobbs v. Knight-Swift Transportation Holdings, Inc.*,
2025 WL 1577271 (S.D.N.Y. June 4, 2025) ........................................ 14

*Hoffman v. Parade Publications*,
15 N.Y.3d 285 (2010) ........................................ 12

*In re Stage Presence Incorporated*,
559 B.R. 93 (Bankr. S.D.N.Y. 2016), a*ff'd sub nom. In re Stage Presence, Inc.*, 2019 WL 2004030 (S.D.N.Y. May 7, 2019) ........................................ 9

*In re Virtu Fin., Inc. Sec. Litig.*,
770 F. Supp. 3d 482 (E.D.N.Y. 2025) ........................................ 5

*Klock v. Lehman Bros. Kuhn Loeb Inc.*,
584 F. Supp. 210 (S.D.N.Y. 1984) ........................................ 15

*Magnuson v. Newman*,
2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013) ........................................ 9

*Manfredonia v. Am. Airlines, Inc.*,
68 A.D.2d 131 (2d Dept. 1979) ........................................ 9

*McSweeney v. Cohen*,
776 F.Supp.3d 200 (S.D.N.Y. 2025) ........................................ 22

*Meilus v. Rest. Opportunities Ctr. United, Inc.*,
2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021) ........................................ 7, 13

*Moynihan v. New York City Health & Hosps. Corp.*,
120 A.D.3d 1029 (1st Dept. 2014) ........................................ 19

*Murray v. Brag Sales Inc.*,
2024 WL 4635479 (S.D.N.Y. Oct. 31, 2024) ........................................ 11

*O'Neill v. Mermaid Touring Inc.*,
968 F. Supp. 2d 572 (S.D.N.Y. 2013) ........................................................................ 10

*Pakniat v. Moor*,
192 A.D.3d 596 (1st Dept. 2021) ........................................................................ 17

*Plymack v. Copley Pharm., Inc.*,
1995 WL 606272 (S.D.N.Y. Oct. 12, 1995) ........................................................................ 15

*Reddington v. Staten Island Univ. Hosp.*,
373 F. Supp. 2d 177 (E.D.N.Y. 2005), aff'd in part, question certified, 511 F.3d 126 (2d Cir. 2007), certified question accepted, 9 N.Y.3d 1020, 881 N.E.2d 214 (2008), and certified question answered, 11 N.Y.3d 80, 893 N.E.2d 120 (2008), and aff'd, 543 F.3d 91 (2d Cir. 2008) ........................................................................ 19

*Rice v. Scudder Kemper Invs., Inc.*,
2003 WL 21961010 (S.D.N.Y. Aug. 14, 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d Cir. 2006) ........................................................................ 16, 17

*Rojas v. Roman Catholic Diocese of Rochester*,
660 F.3d 98 (2d Cir. 2011) ........................................................................ 21

*Smith v. Vera Inst. of Just., Inc.*,
2023 WL 11879682 (E.D.N.Y. Aug. 11, 2023) ........................................................................ 10, 12

*Tonra v. Kadman Holdings, Inc.*,
405 F. Supp. 3d 576 (S.D.N.Y. 2019) ........................................................................ 21

*Warman v. Am. Nat'l Standards Inst.*,
2016 WL 3676681 (S.D.N.Y. July 6, 2016) ........................................................................ 15, 16

**Statutes**

Fed. R. Civ. P. 12(b)(1) ........................................................................ 1

Fed. R. Civ. P. 12(b)(6) ........................................................................ 5

NYLL §740 ........................................................................ 10, 14

NYLL §741 ........................................................................ 1, 8, 19, 20

**Other Authorities**

*2019 New York Assembly Bill No. 375*, New York Two Hundred Forty-Second Legislative Session .......... 8

## PRELIMINARY STATEMENT

Defendant, Beyond Air, Inc ("Beyond Air" or "Defendant") submits this memorandum of law in support of its motion to dismiss the complaint filed by plaintiff, Jeffrey Griebel ("Griebel" or "Plaintiff"). Plaintiff, resides in and performed his work duties over 360 days per year in Colorado, initiated this action under Section 740 and 741 of the New York Labor Law alleging that he was improperly terminated from his role as a Director of Clinical Services for Beyond Air in retaliation for certain whistleblower complaints. Beyond Air seeks to dismiss this matter under Fed. R. Civ. P. 12(b)(1) and (6) due to Plaintiff's failure to state a claim under the New York Labor Law because: (a) as a Colorado resident and employee who was only in New York 4 days (including 2 travel days) in the year prior of his termination, and the year prior to that, cannot state a claim under the New York Labor Law ("NYLL"); (b) even if he could avail himself of the NYLL (which he cannot), Plaintiff is not a "healthcare worker" and cannot assert a claim under NYLL §741; and (c) the emails that Plaintiff relies on for his complaint are not protected by the statute (even if he could, *arguendo*, avail himself of the statute). Accordingly, Plaintiff's complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

### *A. Beyond Air is a Publicly Traded Company Incorporated in Delaware*

Beyond Air is a publicly traded commercial-stage medical device and biopharmaceutical company developing a platform of nitric oxide generators and delivery systems capable of generating nitric oxide from the ambient air.[1] Beyond Air is a Delaware company with offices in

[1] *See* Declaration of John Morr ("Morr Decl.") at ¶2.

Garden City, New York and Madison, Wisconsin.[2] International offices are located in Dublin, Ireland and Rehovot, Israel.[3]

### *B. Plaintiff's Situs of Employment with Beyond Air Is In Colorado*

Plaintiff was employed by Beyond Air as the Director of Clinical Services from December 13, 2021 until December 31, 2024.[4] His situs of employment was his house in Brighton, Colorado.[5] In connection with his employment, Plaintiff was provided with an offer letter, which included an "At-Will Employment and Confidentiality Agreement" (the "Agreement").[6] The Agreement requires that Plaintiff maintain Beyond Air's confidential and trade secret information confidential, and contained certain restrictions on the solicitation and job activities of Plaintiff following his employment at Beyond Air.[7] Although the Agreement has a choice of law provision providing that only the Agreement (inclusive of Plaintiff's post-employment restrictions) is governed by New York law and would be litigated in New York, his situs of employment was always in Colorado.[8]

### *C. Plaintiff's Limited Contacts with New York State*

As reflected on the job description, Plaintiff was a remote worker who worked out of his home office in Colorado.[9] As a remote employee, Plaintiff's contacts with Beyond Air's headquarters in New York was extremely limited. During the two years covered by the statute of limitations for NYLL §740 and §741, Plaintiff was in New York 4 days in 2023 from July 15 – 18, and 4 days in 2024 from April 10 -13, 2024.[10] Indeed, in his 3 years of employment (1,114 days),

[2] *See Id.* at ¶3.
[3] *See Id.*
[4] *See Id.* at ¶4.
[5] *See* Amended Complaint [Doc. No. 7] at ¶9.
[6] A copy of this Agreement is annexed as Exhibit A to the accompanying declaration of John Morr ("Morr Decl.").
[7] *See* Morr Decl., Ex. A. at ¶3.
[8] *See* Morr Decl., Ex. A at ¶6.
[9] *See* Morr Decl., Exhibit B.
[10] *See* Morr Decl., Exhibit C.

Plaintiff visited Beyond Air's New York Offices and New York based customers a total of 33 days (or around 2.98% of his employment).[11]

### *D. Plaintiff's Did Not Provide HealthCare Services*

As a Director of Clinical Services, Plaintiff "was responsible for overseeing the use of LungFit PH Devices and communicating with hospitals."[12] Plaintiff oversaw patient incident reports and sat in on calls with Beyond Air's engineering teams to discuss the LungFit device.[13] This was an administrative position that had no interaction with patients.

### *E. Plaintiff's Alleged Complaint in December 2024 Was Just a Regular Email*

At the heart of his complaint is an email exchange between Mr. Griebel and Beyond Air's CEO, Steve Lisi that took place on December 14, 2024.[14] In this email exchange, Mr. Lisi criticized Mr. Griebel and his team for replacing a UTSW system on a Saturday when the system had 800 hours and could have been replaced during the following work week. Mr. Lisi advised that this overnight, weekend delivery was expensive and unnecessary. In response, Plaintiff responded:

> I went back through the history of UTSW CFI's this weekend as I wanted to get the complete story. The request ended up being one device for Maintenance Due (which doesn't make it any better), but the original request had the wrong SN, so another email was sent to update (which is why it looked like two devices). There was a second device (569) that went into Main Delivery Failure on a patient, the hospital is asking for feedback on the device issue as they must do their own investigation (it looks like a compressor or internal leak). Both devices were requested as a "non-urgent" swap by the CS. We have been operating under the following guidelines: When a CFI comes is submitted, it is designated as Urgent or Non-Urgent based on what customer information is supplied. Urgent is considered within 6 hours (or as close as possible) or Non-Urgent (within 24 hours) unless otherwise specified. The hospital was offered Monday and requested Sunday as they stated they had a lot of machines running. We can readdress the non-urgent request time

[11] *See* Morr Decl., Exhibit C and D.
[12] *See* Amended Complaint [Doc. No. 7] at ¶14.
[13] *See* Amended Complaint [Doc. No. 7] at ¶15.
[14] *See* Amended Complaint [Doc. No. 7] at ¶47.

> frame (especially regarding the weekend). I can talk to Derek and Rob about inquiring about the number of devices available at the hospital prior to agreeing to moving a device on a weekend, we can come up with some reasonable guidelines. I will also talk to the CS team about the weekend situation when we get these calls. We do instruct hospitals that they have at least 8 days of therapy (if not more) when the alert goes off. Occasionally we also get the 292-day alert with very low hours on the plasma chamber (last one I saw was around 149 hours).

*See* Morr Decl., **Exhibit D**.

This email exchange is clearly a business discussion about when to replace non-urgent issue on a weekend. In fact, Plaintiff does not even suggest there is anything wrong with the current policy or waiting until Monday. He is not complaining about anything.

### ***F. Plaintiff's Termination from Beyond Air Was For Downsizing Purposes***

Plaintiff was terminated in December 2024, as part of an overall effort by Beyond Air to downsize its employee count by 50%.[15] Indeed, Beyond Air's employee count on March 31, 2024 was 107, and by March 31, 2025, its employee count was reduced to 61.[16] This initiative was necessary to preserve capital as the stock had gone down from a pre-reverse split-adjustment.[17] Plaintiff's role was assumed by his less expensive subordinate.[18]

### ***G. Plaintiff Receives Unemployment Benefits from Colorado***

Following his termination of employment, Plaintiff received unemployment benefits from the state of Colorado, not New York.[19] Colorado, as Plaintiff's residence, as situs of employment, is the state with the most interest in his termination and was the state that issued unemployment benefits.

---

[15] *See* Morr Decl. at ¶8.
[16] *See* Morr Decl. at ¶8.
[17] *See* Morr Decl. at ¶8.
[18] *See* Morr Decl. at ¶8.
[19] *See* Morr Decl. at ¶9; Exhibit E.

## LEGAL ANALYSIS

### I. STANDARD OF REVIEW

Beyond Air moves, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), to dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 496 (E.D.N.Y. 2025), citing *Ashcroft*, 556 U.S. at 678. Under this standard, "[a] complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible." *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d at 496. "Determining whether a complaint states a claim is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 443 (E.D.N.Y. 2025), citing *Iqbal,* 556 U.S. at 679.

### II. RECORDS TO CONSIDER ON THE MOTION TO DISMISS

*A. Documents Incorporated by Reference, such as the December 10, 2024 Email.*

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "A document or communication may be incorporated by reference where the plaintiff expressly refers to the document or communication or otherwise relies on it in his pleadings." *Barshay v. Naithani,* 2023 WL 2051170, at *6 (S.D.N.Y. Feb. 16, 2023), *aff'd,* No. 23-382, 2023 WL 8708424 (2d Cir. Dec. 18, 2023).

Here, in his complaint, Plaintiff references his email correspondence with Mr. Lisi that was sent on December 14, 2024, and thereby has incorporated the contents of this email by reference.

*B. Documents Integral to the Complaint, Such As the Employment Agreement, Proof of Situs of Employment and NY Contacts.*

Additionally, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Additionally, records of Plaintiff's receipt of unemployment in Colorado and his expense reports demonstrating his limited contacts with New York are integral to and related to the allegations raised in Plaintiff's complaint. *See Meilus v. Rest. Opportunities Ctr. United, Inc.*, 2021 WL 4868557, at *11 (S.D.N.Y. Oct. 15, 2021), (where the court determined that it was appropriate to consider "certain documents showing that Meilus' mailing address at all relevant times was in Washington D.C. and Taylor's was in New Orleans," on the finding that such records "are more or less incorporated into the factual allegations of the [second amended complaint], which specifically alleges that Meilus lived and worked in Washington D.C. and Taylor lived and worked in New Orleans, and that they came to New York or communicated with New York from time to time.")

Accordingly, the Court should consider the records annexed to the motion, which demonstrate that Plaintiff's residence and employment all took place in Colorado, and his contacts

with New York were *de minimus*, spending at most 4 days per year in New York in the two years covered by the statute of limitations. Thus, Plaintiff has no claim under §§ 740 and 741 of the New York Labor Law.

*C. Alternatively, the Court May Consider This as a Motion for Summary Judgment.*

Under Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Galeotti v. Cianbro Corp.*, 2013 WL 3207312, at *3 (N.D.N.Y. June 24, 2013).

## III. PLAINTIFF, A COLORADO EMPLOYEE WHO SPENT NO MORE THAN 4 DAYS PER YEAR IN EACH OF THE TWO YEARS PRECEDING HIS TERMINATION, CANNOT STATE A CLAIM UNDER NYLL §§ 740 or 741.

*A. Plaintiff Is A Resident and Employee Based Out of Colorado.*

It cannot be disputed that Plaintiff is a resident of Colorado whose contacts with New York were extremely limited throughout his employment at Beyond Air, Inc. In the two years prior to his termination due to an employee reduction, as reflected in his expense reports records, Plaintiff spent less than 2% of his time at Beyond Air in New York. Particularly, in 2024 he was only in New York for 4 days, from July 15-18, 2024 (1.095%).[20] In 2023, he was in New York 4 days, from April 10-13, 2023 (1.0985%).[21] These limited contacts are insufficient for Plaintiff to state a claim under the New York Labor Law.

---

[20] *See* Morr Decl. at ¶5.

[21] In total, he only spent 33 of his 1,114 days of employment (or 2.98%) in New York State. *See* Morr Decl. at ¶5; Exhibit D.

*B. The New York Labor Law Does Not Apply to Work Performed Out of State.*

"It is well-settled that the New York Labor Law does not apply to work that is performed outside the State of New York." *In re Stage Presence Incorporated*, 559 B.R. 93, 98–99 (Bankr. S.D.N.Y. 2016), a*ff'd sub nom. In re Stage Presence, Inc.*, 2019 WL 2004030 (S.D.N.Y. May 7, 2019); *see also Magnuson v. Newman*, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013)("In combination with the presumption against extraterritoriality, it follows that the [NYLL] does not apply to people who work outside of the State of New York."). Indeed, "[u]nder New York law, it is a 'settled rule of statutory interpretation, that unless expressly stated otherwise, "no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state ... enacting it."'" *Magnuson*, 2013 WL 5380387, at *5, citing *Goshen v. Mut. Life Ins. Co. of New York*, 286 A.D.2d 229, 229 (1st Dept. 2001), *aff'd,* 98 N.Y.2d 314 (2002); *Manfredonia v. Am. Airlines, Inc.*, 68 A.D.2d 131, 137 (2d Dept. 1979) ("New York recognizes the general rule that a statute is presumed to apply only within the State, and that the Legislature may limit the territorial application of a statute.") (internal citations omitted). "Nothing in the [NYLL] suggests that the legislators intended to give persons who were outside New York the right to come to New York to sue their employers." *O'Neill v. Mermaid Touring Inc.,* 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013), citing *Hammell v. Paribas*, 1993 WL 426844, at *1 (S.D.N.Y. Oct. 22, 1993)(Dismissing a claim by a Japanese executive seeking attorneys' fees under the NYLL for work completed in Japan); *see also Smith v. Vera Inst. of Just., Inc.,* 2023 WL 11879682, at *15 (E.D.N.Y. Aug. 11, 2023)("Courts in this Circuit have held that the NYLL does not apply extraterritorially to work performed outside of New York." ). That the legislature did not intend to extend the protections of NYLL §§740 and 741 to apply to nonresidents is reflected in the memorandum submitted in support of the amendments in 2019, when it stated in the Purpose and General Idea of the Bills

"Whistleblowers ***in NY*** are currently barred from bringing any other legal claims they may have if they choose to bring a whistleblower claim." *2019 New York Assembly Bill No. 375*, New York Two Hundred Forty-Second Legislative Session (emphasis added).

*C. Plaintiff's De Minimus Contacts With New York Do Not Extend the Reach of the NYLL.*

Plaintiff, a Colorado resident, as detailed above had *very* limited contacts in New York. These contacts (totaling no more than 8 days in 2 years of the statute of limitations) is insufficient for Plaintiff to state a claim under the NYLL. In order to raise a claim under a New York statute, the employee must show that the purported misconducted occurred or had an impact within the bounds of New York. *See Murray v. Brag Sales Inc.*, 2024 WL 4635479, at *2 (S.D.N.Y. Oct. 31, 2024)("Similarly, districts courts applying *Hoffman* have consistently rejected NYCHRL claims brought by City residents who worked elsewhere, holding that 'the location of the plaintiff's workplace is where the impact of discriminatory conduct occurred.'") However, no such impact has been or may be alleged by Plaintiff – a Colorado resident who worked remotely from his home in Colorado and the email in question from outside of New York.

*D. Plaintiff Was Only In New York State For 4 Days in 2024 and 2023.*

Beyond Air's business records demonstrate that Plaintiff's contacts in New York state were very limited – only 4 days in 2024 and 4 days in 2023 – and are insufficient to create an impact in New York.

In *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC,* 2006 WL 2356157, at *7 (S.D.N.Y. Aug. 9, 2006), an employee who moved to London and "worked in New York approximately four weeks a year," "continued to service North American clients, many of whom were in New York," and whose move from London was intended to be temporary, had contacts too attenuated to permit her to raise a claim under the Equal Pay Provisions of the NYLL. Here, Plaintiff's *four days* in

New York are significantly less than the four weeks in *Hart*, which were insufficient to raise a claim under the NYLL.

In *Hoffman v. Parade Publications*, 15 N.Y.3d 285, 289 (2010), the Court of Appeals uphold the dismissal of a Georgia resident's claims raised under the New York State and New York City Human Rights Laws, where the only nexus to New York was that the decision to terminate the plaintiff's employment occurred in the defendant's New York City office. *See also Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, 2015 WL 5567073, at *9 (E.D.N.Y. Sept. 21, 2015)("a state's labor laws do not reach work done entirely and exclusively outside that state.")(collecting cases).

In *Smith v. Vera Inst. of Just., Inc.*, 2023 WL 11879682, at *16 (E.D.N.Y. Aug. 11, 2023), the Court dismissed plaintiff's claims for retaliation under the NYLL where "there is no question that plaintiff here seeks protection from the NYLL for alleged acts of retaliation that occurred in July and August 2020 and there are no allegations in the Amended Complaint placing plaintiff in New York during those months," and, in fact, plaintiff's contacts, like Plaintiff in this action, only had one work trip to New York state, was insufficient to state a claim under the NYLL. Notably, like Plaintiff, the Court found that the fact that the former employee "was supervised by staff in New York City and had the New York address listed on his business card and email signature" was not sufficient to permit him to raise a claim under the NYLL, NYSHRL or NYCHRL. *See Id.* at *1.

Similarly, in *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 42 (2d Cir. 2012), the Second Circuit upheld the dismissal of the plaintiff's NYCHRL claims where the plaintiff, was a resident of Connecticut, and plaintiff "frequently communicated with LVI's New York headquarters and attended meetings in New York City regarding local projects, and because [the employer's]

decision to reassign his work duties was made in New York." Even these contacts were found to not have a sufficient impact to permit the out-of-state employee to raise a claim under the NYCHRL because the employee did not "work in the city."

In *Meilus*, 2021 WL 4868557, at *10, the New York State Human Rights Law claims for two non-resident plaintiffs were dismissed finding that the non-resident plaintiff's claims that they were in "regular communication with staff and supervisors" employed in New York, and were "required to travel regularly to New York for staff meetings and planned events," was insufficient to raise a claim under the New York State Human Rights Law because the impact of the termination took place in the non-residents home state of D.C. and Louisiana. Plaintiff, here, who only traveled to New York 4 days in 2024 and 4 days in 2023 had far less contacts with New York than the non-resident plaintiffs in *Melius,* and, as such, still cannot raise a claim under the NYLL.

In contrast, in *Hobbs v. Knight-Swift Transportation Holdings, Inc.*, 2025 WL 1577271, at *17 (S.D.N.Y. June 4, 2025), the District Court considering a class action under the NYLL for unpaid wages, considered that New York law applied because "all but three of the twenty-two drivers identified either by Swift or Plaintiffs spent more than 60 percent of their duty in New York; most spent well above 80 percent of their time in New York." Here, the 1.095% of time spent by Plaintiff in New York is well below the 60-80% of time the drivers in *Hobbs* spent which was sufficient to find that New York held a greater interest in the litigation.

Additionally, the eight days total that Plaintiff spent in New York in 2024 (4 days) and 2023 (4 days) is also far less than the amount of time that the plaintiff in *Garcia v. ROC Nation LLC,* 2025 WL 1865965, at *17 (S.D.N.Y. July 2, 2025) who alleged that "he worked in New York consistently, and as a result of his termination, which he alleges was retaliatory, he lost this New York employment," where the Court declined to dismiss the plaintiff's NYLL §740 claims on the

finding that further discovery was needed into the plaintiff's contacts with New York. Here, no such further discovery is required because the expense reports submitted by Plaintiff show that Plaintiff's contact with New York was very limited, and, therefore, the termination has no impact in New York.

It is also notable that the complaint Plaintiff relies on for his whistleblowing complaint (which was made from his home in Colorado) concerns a hospital based in Texas[22] – further demonstrating that New York does not hold an interest in Plaintiff's claim.

These cases demonstrate that Plaintiff, who spent only 4 days in New York in 2024 and 4 days in 2023, and less than 3% of his time in New York in his 3 years of employment, and who is receiving unemployment from Colorado and who sent the email at issue from his home in Colorado, does not have sufficient contacts with New York to assert a claim for retaliation under NYLL §§740 or 741. Accordingly, the amended complaint must be dismissed.

*E. The Choice of Law Provision Does Not Extend to the NYLL.*

Plaintiff's reliance in the New York choice of forum provision in the Agreement to support his claim under NYLL §§740 and 741 is misplaced. "A contractual choice-of-law provision, however, does not bind the parties with respect to non-contractual causes of action." *Plymack v. Copley Pharm., Inc.,* 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995)(declining to dismiss a claim under Mass. L §93A, where the parties' agreement included a New York choice of law provision.) In this respect, "a choice-of law provision indicating only that an *agreement* will be governed by New York law will not bind the parties for non-contractual causes of action." *Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3676681, at *3 (S.D.N.Y. July 6, 2016); *Klock v. Lehman Bros. Kuhn*

[22] *See* Amended Complaint [Doc. No. 7] at ¶47; Exhibit D.

*Loeb Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y. 1984)("it has been held in New York that a contractual choice of law provision governs only a cause of action sounding in contract.")

Here, the offer letter's "Governing Law" provision provides:

> This Agreement will in all respects be interpreted, governed, and enforced by the laws and courts of the State of New York, without regard to its principles of conflicts of laws. If a dispute arises out of or in connection with this Agreement or the subject matter of this Agreement, including without limitation, regarding the breach, termination, or validity of this Agreement, Employee agrees that a claim can be brought in only in a federal or state court in New York. Employee consents to the personal jurisdiction of such courts with respect to any claim raising out of or in connection with this Agreement, including without limitation, regarding the breach, termination or validity of the Agreement.

The thrust of the Agreement provides that disputes concerning "this Agreement" including disputes about breach, termination, or validity of the Agreement, are governed by New York law. Here, such choice of law provision that extends to the Agreement, only sounds in claims pertaining to contract, and is not so broad as to encompass statutory claims. *See, e.g., Warman,* 2016 WL 3676681, at *3.

In *Rice v. Scudder Kemper Invs., Inc.*, 2003 WL 21961010, at *4 (S.D.N.Y. Aug. 14, 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147 (2d Cir. 2006), a choice of law provisions which stated "[t]he validity, interpretation, construction, and performance of this Agreement shall be governed by the law of the state of New York," did not extend to a statutory claim under the NYSHRL because "[i]t is settled New York law that language such as this creates New York common law contractual claims but not statutory ones." *Id*.

Further, in *Rice*, even absent the choice of law issue, plaintiff could not raise a claim under the NYSHRL because "[a]s a nonresident, plaintiff must show that he was discriminated against in New York in order to state a claim under the NYHRL." *Rice,* 2003 WL 21961010, at *5. This

reasoning was applied in *Pakniat v. Moor*, 192 A.D.3d 596, 597 (1st Dept. 2021), which found that:

> [t]he forum selection clause in plaintiff's employment contract, which mandates that all claims arising out of the contract be litigated in New York, does not permit plaintiff to bring her City HRL and State HRL claims as a nonresident. To avail herself of these statutes, plaintiff must still satisfy the jurisdictional requirement that the impact of the discrimination was felt in New York City and State.

Here, as in *Pakniat,* the impact of the termination was felt in Colorado – not New York – where Plaintiff was employed.

In *Hammel v. Paribas*, 1993 WL 426844 (SDNY 1993), the court declined to extend the NYLL attorneys' fees provision to an award for an unpaid bonus that was earned by plaintiff when he was stationed in Tokyo, Japan. In *Hammel,* the bonus was part of a contract that was subject to New York law. However, in declining to apply the remedial provisions of the NYLL, the Court stated "[t]he fact that the Court decided that principles of New York contract law apply to the parties does not mean that New York labor law also applies. The attorney fee statute is a separate and distinct law requiring a separate and distinct extraterritoriality analysis." *See* Hammel, 1993 WL 426844 at fn 3. Here, as in *Hammel,* the mere fact that the Agreement has a New York state forum selection, does not extend the protections of NYLL §§740 and 741 to Plaintiff.

## IV. BEYOND AIR IS NOT A HEALTH CARE EMPLOYER AND PLAINTIFF WAS NOT A HEALTH CARE EMPLOYEE AND CANNOT ASSERT A CLAIM UNDER NYLL §741.

As to Plaintiff's second cause of action under NYLL §741, even assuming, *arguendo*, that Plaintiff could raise a claim under the NYLL (which Beyond Air denies), Plaintiff who worked as a Director of Clinical Services[23] for Beyond Air, a biopharmaceutical company, cannot assert a claim under NYLL §741, which is for health care workers. As a Director of Clinical Services,

[23] *See* Amended Complaint [Doc. No. 7] at ¶3.

Plaintiff, as alleged in the Amended Complaint, "was responsible for overseeing the use of LungFit PH Devices and communicating with hospitals."[24] Plaintiff oversaw patient incident reports and sat in on calls with Beyond Air's engineering teams to discuss the LungFit device.[25] This was an administrative position, based out of Plaintiff's home in Colorado, in which Plaintiff had no interaction with patients nor did he provide any health care services to patients. As stated in the job description for this role, Plaintiff was responsible to:

> direct the clinical specialist team in support of commercial operations and medical affairs enquiries. This individual works closely with senior management including clinical affairs, engineering, research and development and the commercial field teams and directors to ensure that customers are appropriately trained to assure patient safety and customer enquiries are dealt with and that current and future products are optimized for patients and customers. This position also maintains awareness of the clinical developments in the field, new and emerging therapies, competitive intelligence and reports pertinent information to senior management.[26]

*A. Plaintiff As An Administrator Did Not Provide Health Care Services to Patients And Is Not An Employee Under NYLL §741.*

NYLL §741(1)(a) defines an employee as "any person who **performs** health care services for and under the control and direction of any public or private employer which provides health care services for wages or other remuneration." N.Y. Lab. Law § 741(Emphasis added). Plaintiff who was the Director of Clinical Care did not provide health care services.

In *Reddington v. Staten Island Univ. Hosp.*, 373 F. Supp. 2d 177, 187 (E.D.N.Y. 2005), aff'd in part, question certified, 511 F.3d 126 (2d Cir. 2007), certified question accepted, 9 N.Y.3d 1020, 881 N.E.2d 214 (2008), and certified question answered, 11 N.Y.3d 80, 893 N.E.2d 120 (2008), and aff'd, 543 F.3d 91 (2d Cir. 2008), a claim under NYLL §741 was dismissed because "[t]here

[24] *See* Amended Complaint [Doc. No. 7] at ¶14.
[25] *See* Amended Complaint [Doc. No. 7] at ¶15.
[26] *See* Morr Decl. at **Exhibit B**.

are no allegations in the complaint that plaintiff 'performed health care services' while employed by SIUH or was a health care employee. Instead, the complaint alleges that she acted as an interpreter and that she held the positions of Coordinator and Manager of Volunteer Services and later Director of the IPP. Defendants concede that plaintiff was a non-medical employee." Likewise in *Moynihan v. New York City Health & Hosps. Corp.*, 120 A.D.3d 1029, 1032 (1st Dept. 2014), where the petitioner "reviewed the supporting paperwork for research projects involving human subjects for compliance with applicable regulatory requirements. She had no responsibility, direct or indirect, for providing treatment or care to any patient, for any patient outcome, or even for facilitating the provision of care or treatment to patients through the allocation of HHC resources," the court found that the petitioner, a licensed nurse, was not a health care employee and could not raise a claim under NYLL §741.

Here, as in *Reddington* and *Moynihan*, Plaintiff was the Director of Clinical Services. In this position, he "was responsible for overseeing the use of the LungFit PH Devices and communicating with hospitals."[27] As with the plaintiff in *Reddington* and *Moynihan*, Plaintiff's administrative, non-clinical role, with Beyond Air, in which he had no direct contact with patients, does not render him a health care employee as contemplated by NYLL §741.

*B. Beyond Air Does Not Provide Health Care Services and Is Not An Employer Under NYLL §741.*

An "employer" is defined under the NYLL §741(1)(b) as "any partnership, association, corporation, the state, or any political subdivision of the state which: (i) provides health care services in a facility licensed pursuant to article twenty-eight or thirty-six of the public health law; (ii) provides health care services within a primary or secondary public or private school or public or private university setting; (iii) operates and provides health care services under the mental

[27] *See* Amended Complaint [Doc. No. 7] at ¶14.

hygiene law or the correction law; or (iv) is registered with the department of education pursuant to section sixty-eight hundred eight of the education law." Here, Beyond Air, a biopharmaceutical and medical device company does not provide health care services. It provides devices only. Plaintiff, a Director of Clinical Operations, does not provide health care services. He provides devices, information on how to run them and repair such devices. Accordingly, Beyond Air is not an "employer" as defined under NYLL §741 and Plaintiff is not an "employee." Therefore, Plaintiff's claim under NYLL §741 must be dismissed.

## V. PLAINTIFF DID NOT ENGAGE IN ANY WHISTLEBLOWING ACTIVITY.

Even assuming, *arguendo*, that Plaintiff could assert a claim under the NYLL (which he cannot), his claim under NYLL §740 and §741 (if he even was a healthcare worker) ultimately fails because Plaintiff did not engage in any whistleblowing activities. For an activity to be protected under NYLL §740 or §741, an employee must make clear that he is objecting to conduct prohibited by the specific law at issue. *See* *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (explaining that complaints cannot be generalized they must place an employer on notice that the employee is complaining of "conduct prohibited by Title VII."); *HC2, Inc. v. Delaney*, 510 F.Supp.3d 86, 96 (2020) ("Under Section 740, the employee's complaint to the company must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the allegedly complained-of conduct"); *Tonra v. Kadman Holdings, Inc.*, 405 F. Supp. 3d 576, 586 (S.D.N.Y. 2019) (holding same); *McSweeney v. Cohen*, 776 F.Supp.3d 200, 276 (S.D.N.Y. 2025) (identification requirement still applies in context of Section 740 as recently amended).

Here, even reviewing it in the light best suited for Plaintiff, there is nothing in Plaintiff's exchange with Mr. Lisi on December 14, 2024[28] that would place Beyond Air on notice that it violated a regulation or statute. *See* Statement of the Facts, *supra*, at D. Particularly, the email exchange shows a CEO of a struggling startup frustrated that its staff engaged in an expensive and unnecessary weekend repairs, and there is nothing in Plaintiff's response that either opposed Mr. Lisi's assessment of the unnecessary expense nor that Beyond Air's policies to avoid such an unnecessary expense was either a statutory or regulatory violation. Accordingly, even if he could assert a NYLL claim (which Beyond Air maintains that he cannot), his claim cannot prevail because Plaintiff never engaged in any protected activity.

[28] This email exchange is referenced in paragraph 47 of the Amended Complaint [Doc. No. 7], and is thereby incorporated by reference, and attached as Exhibit D to the Morr Decl.

## CONCLUSION

Plaintiff is a resident of Colorado, and a remote employee whose situs of employment is Colorado. He only spent 4 days in 2024 and 4 days in 2023 in New York. Thus, Plaintiff cannot assert a claim under the NYLL. Plaintiff fails to demonstrate how his termination (for which he received unemployment from the state of Colorado) had a sufficient impact in New York State to permit him to assert a claim under the NYLL. Further, the choice of law provision in the offer letter only applies to the Employment Agreement and does not extend the NYLL provisions to Plaintiff's claims for wrongful termination. Additionally, as a non-clinical, non-patient touching employee of a biopharmaceutical company, Plaintiff may not assert a claim under NYLL §741. Lastly, there is nothing in Plaintiff's exchange with Mr. Lisi in December 2024, which amounts to whistleblowing. Accordingly, Plaintiff has not and cannot state a claim under NYLL §§ 740 and 741, and, as such, his complaint must be dismissed in its entirety.

Dated: December 22, 2025
Uniondale, New York

FORCHELLI DEEGAN TERRANA LLP

By: _/s/*Lisa M. Casa*_________________________
Lisa M. Casa, Esq.
Gregory S. Lisi, Esq.