# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

JEFFREY GRIEBEL,

Plaintiff,

-against-

BEYOND AIR, INC.,

Defendant.

- - - - - - - - - - - - - - - - X

25-CV-2369(AMD)

United States Courthouse
Brooklyn, New York

Wednesday, October 29, 2025
11:00 a.m.

TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
BEFORE THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiff: OTTERBOURG P.C.
Attorneys for the Plaintiff - Jeffrey Griebel
230 Park Avenue
New York, New York 10169
BY: RICHARD G. HADDAD, ESQ.

For the Defendant: FORCHELLI DEEGAN TERRANA, LLP
Attorneys for the Defendant - Beyond Air, Inc.
333 Earle Ovington Boulevard
Uniondale, New York 11553
BY: LISA M. CASA, ESQ.

Court Reporter: Anthony D. Frisolone, FAPR, RDR, CRR, CRI
Official Court Reporter
Telephone: (718) 613-2487
Facsimile: (718) 613-2694
E-mail: Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

(In open court.)
COURTROOM DEPUTY: This is civil cause for a premotion conference, Docket No. 25-CV-2969, Griebel versus Beyond Air, Inc.
Counsel, state your appearances; plaintiff first.
MR. HADDAD: Rich Haddad along with Alessandra Dagirmanjian from Otterbourg for the plaintiff Jeffrey Griebel.
THE COURT: Good morning.
MS. CASA: Good morning, your Honor. Lisa Casa for Forchelli Deegan Terrana, LLP, for the defendant, Beyond Air.
THE COURT: Good morning.
Everybody can stay seated; just make sure you pull up the microphone. And the other thing I'm going to ask you to do is not speak too quickly so we don't make our court reporter miserable.
So this is a premotion conference on an anticipated motion to dismiss. I guess my first question is, have you thought about resolving this case at all? Is there any possibility of that?
MR. HADDAD: Your Honor, we have a settlement conference with the magistrate judge scheduled for November 18th.
THE COURT: Okay. Is that Judge Tiscione?

MR. HADDAD: Yes.

THE COURT: I guess a couple of questions.

I mean, do you feel that you're on a positive track that way?

MS. CASA: You know, your Honor, we're always open to discuss settlement. There was a demand made which we thought was very large. It was very large and not unusual in a plaintiff's case. But also, I think it is a little difficult here because the question is, you know, we only have these New York Labor Law whistleblower claims and I think as the case law clearly states, Mr. Griebel is a Colorado resident, it's hard to see how he can even raise a claim. So it's hard to, you know, how are we settling when it's hard to see what cause of action there is?

THE COURT: Let's talk about that for a second.

I'm just going to look at your -- in your letter, you say that the plaintiff's contacts with New York were limited to telephone calls and e-mails with his colleagues in New York. The plaintiff says that was a lot more than that. So it seems to me that that's one of those, I'm going to quote Judge Woods, "intensive factual inquiries" that have to be undertaken. Because I think the plaintiff is going to disagree with you that it was just phone calls.

The other thing that, I mean, first of all, I don't see any citations to cases involving these particular

statutes. The human rights law is something that's quite different, really. I mean, the purposes of it and the limits to the effects in New York City, if it's a New York City Human Rights Law or the state human rights law.

But I guess my first question for both of you, are either of you aware of any cases dealing with the labor law with a whistleblower, do you know of any?

MS. CASA: I will say candidly there was a case in the Southern District that I came across that they had done motion to dismiss briefing with the same, I believe it was the same statutes and also there was an employment contract here with restrictions with the New York Choice of Law. That I would have thought would have been very instructive to this court. It does upon my last checking of the docket the parties resolved it before the Court had rendered a decision.

THE COURT: I see. What an excellent example.

My point is, I think it's not the best use of our time to brief this issue on this record. And as Judge Woods pointed out in kind of a slightly different context, these are very fact intensive. And I think even if I were to rule your way, the Second Circuit would send you right back to me. So I just don't think that's the greatest use of time.

The other interesting feature is that choice of law, the New York Choice of Law in the contract. I mean,

you said that you had found that one case but the judge didn't write on it. I mean, it seems like putting a choice -- New York Choice of Law is a factor that distinguishes this from other cases.

What do you have to say about that?

MS. CASA: I don't agree on that point just because I do think the *Paribas* case that I cited to that did deal with the New York Labor Law in the context of attorney's fees rights for unpaid bonuses. They found that just because there was a choice of law provision in the employment contract of New York does not extend to New York Labor Law. And there is a distinction between how to interpret the contract versus whether or not New York law's statutes should be here.

I mean, just an employer in New York State can't contract away, or even an out-of-state employer, can't contract away a New York State employee's rights under the New York Human Rights Law or labor laws just by choosing a different venue for choice of law, so, too, can't we now expand the statute so much. So I do think that the fact that the case law which, again, the contract really dealt with restrictive covenants, use of confidential information, and non-competes/non-solicits is really outside --

THE COURT: I'm sorry, non-competes?

MS. CASA: Non-competes and non-solicits. Is

different than whether or not the New York Labor Law whistleblower retaliation provisions.

THE COURT: What about New York's interest, particular interest, in protecting whistleblowers, or for the impact that the whistleblower's reports have on New York residents. That's a little bit different than the human rights context.

MS. CASA: Although that may be true, I will say I looked at opposing counsel's argument about the statement purpose. And actually, I looked through the New York Labor Law §740 underlying statutory text. And if you look in the 2019 amendments, in the purpose of the statute when presenting it to Governor Cuomo's for signature, it specifically stated the purpose was to protect employees in New York.

So, you know, there's since been amendments and they haven't particularly post, you know, use of remote work, they haven't made an amendment. So I do think the interest does still remain for employees of New York State.

THE COURT: Well, let's go back, then, to that factual question.

If you are wrong about the amount of the number of times the plaintiff was in New York, the contacts he had with New York, you might not have such a strong argument. So if he's regularly coming to New York, if he's visiting

customers, signed the contract here, got fired here. Just, I mean, the possibilities are pretty numerous and I think you allude to some of them in your letter. I think we'll be right back to where we started from. This is not the kind of case to resolve on a motion at this stage. I don't understand you do be bringing, unless you're thinking about it, a motion to dismiss the complaint for other reasons, for §12(b)(6) or anything like That. I don't want to give you any ideas but I didn't read your letter to be thinking about that kind of a motion.

MS. CASA: I thought that just whether or not there could even be a claim. I will, to your point, I hear what you are saying on the context. But even if it's more than just phone calls, you know, I think *Hoffman* from the Court of Appeals as well as decisions from the New York State Court of Appeals and the Second Circuit says that even attending quarterly meetings, having bosses based out of New York, having the decision to terminate based out of New York is enough for an extraterritorial reach.

THE COURT: That's Judge Spatt's decision. And that was New York City Human Rights Law and the person worked out in South Hampton.

So all I'm saying is that we could probably go back and forth on what facts would be sufficient but I have to know what they are in order to make the decision. And I

just don't think, you know, the amount of time you'll have to be putting into briefing it I don't think it's worth the cost. I don't know maybe you could exchange some discovery on that. Maybe before your settlement conference with Judge Tiscione, you could really have a sit-down about what the facts are.

I mean, it does seem to me from the plaintiff's representation that he spent a fair amount of time in New York. So I don't think, if that's correct, I don't think characterizing him as just a solely remote worker is seems to be an accurate reflection of the record.

So here's what I'm going to suggest. Rather than set a briefing schedule at this point, I think it's worth a shot to sit down with Judge Tiscione. I'll give him a call and just mention that we had this conference and see if you're able to work something out. And even if you can't, I also think it's worthwhile to, I guess, as a jurisdictional discovery to do. Doesn't seem like it would take very long to do it to figure out what facts we're operating from, so that might be something to do.

And I just want to just -- I think I'm right about this. Neither side has found a case involving Section 741 and a worker who worked remotely or who lived someplace else but was employed in New York.

Have you found any such case involving that?

MR. HADDAD: No. The closest case that we have is the Judge Woods case that you referenced earlier. I mean, I would overlay any of those facts with the law, the governing law clause, which calls for, it's there in the contract. It calls for the application of New York Law without regard to principles of conflicts of law and further states that if a dispute arises out of the agreement including, specifically, including termination, the claim can only be brought in the federal or state court in New York. And when you overlay that with the offer letter, the actual letter that they sent to him saying, hey, welcome to the company it says, Your new position will be Director of Clinical Services based out of our Garden City, New York office. That I think is pretty powerful evidence there and I think that it is fair to distinguish between, for example, the wage-and-hour cases or the human rights law, city human rights law cases for all the policy reasons that your Honor just mentioned as well.

THE COURT: Just maybe this is a dumb question, but where would if, I'm not suggesting you make his argument for him, but if the plaintiff can't bring a case in New York, where could he bring it? Colorado?

MS. CASA: Yes, that's where he lives. He's a resident of Colorado.

THE COURT: That seems not so efficient. You have a contract that requires the application of New York Law to

a job that's a New York job, and just because he happens to live in Colorado, you want the Colorado court to interpret the New York Law. That sounds like a very circuitous and sort of inefficient way to proceed.

But why don't we do that. Why don't you talk amongst yourselves, meet with Judge Tiscione in a couple of weeks, figure out the extent to which you want to exchange jurisdictional discovery. I think you should before you meet with him so you have a basis of operation. Then file a status letter with me just letting me know what the progress is.

MR. HADDAD: Sure.

THE COURT: I feel like you can probably work it out.

MR. HADDAD: We're certainly going to approach that in good faith.

THE COURT: It's the holiday season.

MR. HADDAD: Yes, it is the holiday season and they fired him a week before Christmas.

THE COURT: What did you say?

MR. HADDAD: They fired him a week before Christmas, the day after he brought his complaints to the boss. Judge Tiscione actually gave us a premediation discovery schedule.

THE COURT: Great.

MR. HADDAD: And, in fact, they're going to provide us their documents today so, you know, if there's anything else that anyone needs I think it makes -- your Honor's suggestion makes tremendous sense.

THE COURT: Sounds like somebody already thought of it. All right.

Well, does anybody want to put anything on the record?

MS. CASA: Nothing further.

MR. HADDAD: We're good. Thank you.

THE COURT: Thanks so much.

MR. HADDAD: Thank you.

MS. CASA: Thank you.

(WHEREUPON, this matter was adjourned.)

* * *

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

________________________________________

Anthony D. Frisolone, FAPR, RDR, CRR, CRI
Official Court Reporter